UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

NIKOLAOS D. KLONIS,

      Plaintiff,

v.                                                                                                          Civ. No. 1:24-46 GJF/LF

MARINE CORPS ASSOCIATION as
Publisher of LEATHERNECK MAGAZINE OF
THE MARINES,

and

GEOFFREY ROECKER, individually,

      Defendants.

**MEMORANDUM OPINION AND ORDER ON
<u>DEFENDANT MARINE CORPS ASSOCIATION'S MOTION TO DISMISS</u>**

THIS MATTER is before the Court on Defendant Marine Corps Association's ("MCA's") Motion to Dismiss [ECF 7] ("Motion"). The Motion is fully briefed [*see* ECFs 17–18], and Defendant Geoffrey Roecker filed a Notice of Joinder, adopting each of Defendant MCA's arguments and seeking dismissal of Plaintiff's claims against him for the reasons articulated by Defendant MCA [ECF 13]. The Court heard oral argument on May 7, 2024 ("Hr'g").[1] *See* ECF 23. Having thoroughly considered the briefs, the parties' arguments, and the relevant law, the Court will **GRANT** the Motion to the extent Defendants seek a determination that Plaintiff lacks Article III standing for the claims asserted in his Complaint. To the extent Defendants ask the Court to dismiss Plaintiff's claims with prejudice, the Motion is **DENIED**. Instead, for the reasons that follow, the Court will follow Tenth Circuit precedent that requires it to **REMAND** this matter

---

[1] The Hr'g citation refers to the audio recording of the hearing stored on the Court's Liberty system. Although neither the audio recording nor a transcript is currently available on CM/ECF, any party may obtain the recording through the Court's records department and have it transcribed.

to the First Judicial District Court, Santa Fe County, New Mexico for lack of subject matter jurisdiction.

## I. FACTUAL BACKGROUND[2]

Plaintiff Nikolaos D. Klonis filed this action in state court, bringing the same six counts against Defendants MCA and Roecker: Declaratory Relief (Count I), Rescission/Correction (Count II), Unjust Enrichment (Count III), False Light (Count IV), Invasion of Privacy: Misappropriation of Likeness (Count V), and Injunctive Relief (Count VI). ECF 1-1. Defendant MCA timely removed the case to this Court and thereafter filed the instant Motion to Dismiss, asserting two grounds: "(1) Plaintiff lacks standing to sue on his claimed causes of action, and (2) [Plaintiff] fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and (2)."[3] ECF 7 at 1.

Plaintiff's Complaint arises from the publication of an article in the July 2021 issue of Defendant MCA's *Leatherneck Magazine of the Marines* written by Defendant Roecker ("the Article"). *See* ECF 1-1. Entitled "I Never Had Any Idea It Would Get Home: Ellis Underwood, Stanley Troutman, and the legacy of a split second on Saipan," the Article discussed Private First Class Thomas Ellis Underwood's experiences during World War II and the images that photographers Stanley Troutman and W. Eugene Smith purportedly took of Underwood during that time. *Id.* ¶ 16; *see also* ECF 1-1, Ex. 6. According to Plaintiff, Defendant "Roecker asserts

---

[2] The Factual Background derives from Plaintiff's Complaint, the facts of which the Court assumes to be true for purposes of the present motion. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001) (explaining that to resolve a facial challenge to the court's jurisdiction, the court assumes the allegations in the complaint are true).

[3] Although Defendant MCA references Federal Rule of Civil Procedure 12(b)(2) in the introductory section of its Motion, its briefing contains no substantive arguments related to personal jurisdiction. *See* ECFs 7; 18. Moreover, counsel for Defendant MCA confirmed at the Motion hearing that it was not seeking a determination that the Court lacks personal jurisdiction over Defendants. Hr'g at 5:14–6:28.

that the image depicted on the [Article's] first page" of a serviceman drinking from a canteen is of "T.E. Underwood from St. Petersburg, Florida [and was] taken by Stanley Troutman." *Id*. ¶ 16 (citing Ex. 6). Defendant Roecker captioned that first-page photograph:

> This iconic photo taken from photographer Stanley Troutman ran in the July 14, 1944, edition of the St. Petersburg Times with the caption, 'Hot and weary after fighting on the western beaches below Saipan's Mt. Marpi, PFC T. Ellis Underwood . . . takes a long cool drink of water from his canteen. Beads of perspiration glisten on the weary Leatherneck's unshaven face.

*Id*. ¶ 17 (quoting Ex. 6). Plaintiff alleges that "[l]ater in the [A]rticle[,] Roecker doubles down on his false identification of Underwood as the subject of the Eugene Smith 'Weary Soldier' photograph featured in the U.S. Postal Service Commemorative Stamp . . . and the iconic Dangling Cigarette-Look Back *Life* magazine photograph." *Id*. ¶ 18 (citing Exs. 1–6). In support, Plaintiff includes an excerpt from the Article:

> W. Eugene Smith, shooting for *Life* Magazine, also went on to further combat; his photographs of Saipan, Iwo Jima and Okinawa are among the best known images of WW II. He shot three frames of Ellis Underwood; two made it to print, and are easily recognizable today. The last frame, showing Underwood looking back over his shoulder with a cigarette dangling from his lips, symbolized the suffering and determination of a nation – a sentiment so universal that many families have seen their own relative staring out of the masterful photograph. Notably, Underwood is sometimes thought to be Army Sargeant [sic] Angelo Klonis, although further research debunks this claim.

*Id*. (quoting Ex. 6 at 59). Plaintiff observes that "Roecker never states to what research he is referring or who allegedly conducted the research confirming that the images of the Weary Soldier and of the Dangling Cigarette – Look Back are of T. Ellis Underwood and not those of [Plaintiff's father,] Evangelo Klonis."[4] *Id*. ¶ 28. Plaintiff asserts that Defendant MCA "relied exclusively on Roecker's account of facts" in the Article and "did not confirm the truth or accuracy of the material included." *Id*. ¶ 27.

---

[4] The parties use "Evangelo Klonis" and "Angelo Klonis" interchangeably throughout their briefing, as "Angelo" was a moniker for Evangelo Klonis. *See* ECF 1-1 ¶ 7.

3

Plaintiff recounts that his father, Angelo Klonis, who served in the U.S. Army during World War II, told him that he had been photographed by a *Life* Magazine photographer and that Angelo "believed the photo was supposed to be published." *Id.* ¶ 7, 11. Sometime after Angelo passed away, Plaintiff "came across the photo to which his father had earlier referred . . . on the cover of a TIME-LIFE publication called "*LIFE-50th Anniversary of World War II*." *Id.* ¶ 12 (citing Ex. 1).

In 2002, the United States Post Office selected a wartime photo of Angelo Klonis drinking from a canteen to be included in their 'Masters of American Photography' stamp series." *Id.* ¶ 14. Plaintiff refers to this photograph, taken by W. Eugene Smith, as the "Weary Soldier" stamp photograph. *Id.* ¶¶ 14, 18–19. According to Plaintiff, the Post Office "thoroughly researched and verified . . . the authenticity of the [Weary Soldier] photo and the identity of the subject" before featuring it on a commemorative stamp. *Id.* ¶ 14 (citing Exs. 3 & 4). Plaintiff "displayed the[] wartime images of his father on the walls" of the family's bar, "Evangelo's," in Santa Fe, New Mexico. *Id.* ¶ 13.

Plaintiff insists that "James Enyeart, a noted American photographer[ and] scholar [who] worked closely with W. Eugene Smith for several years identifying and organizing Smith's photographs and negatives[,] . . . has stated unequivocally that the soldier" depicted in the Weary Soldier stamp and on the cover of *Life* Magazine is Angelo Klonis. *Id.* ¶ 15 (citing Ex. 5). Moreover, Plaintiff suggests that "[i]nspection of the Eugene Smith digital contact sheet from the W. Eugene Smith Archive . . . confirms that Smith took both photographs – The Weary Soldier [stamp photograph] and the iconic Dangling Cigarette – Look Back" featured on the cover of *Life* Magazine. *Id.* ¶ 19 (citing Ex. 6.1). Likewise, Plaintiff alleges that "Lois Gibson, a world-renowned forensic artist, confirmed that Evangelo Klonis is the soldier depicted on the 1944 cover

4

of *Life*." *Id*. ¶ 32 (citing Ex. 12; www.loisgibson.com; https://en.wikipedia.org/wiki/Lois_Gibson).

## II. SUMMARY OF PARTIES' ARGUMENTS

### A. Defendants' Motion

Defendants insist that Plaintiff lacks standing to pursue his claims because he has not demonstrated an injury in fact that can be traced to Defendants' actions in publishing the Article. ECF 7 at 5–6. In Defendants' assessment, there "is no genuine case or controversy" between the parties, and "Plaintiff is essentially requesting that the Court issue an advisory opinion about the identity of the subject of the two photographs" described in the Article. *Id*. at 6. Alternatively, Defendants contend that Plaintiff's Complaint fails to state a claim under Rule 12(b)(6) because it lacks sufficient facts to plausibly satisfy the elements of any of his substantive claims. *Id*. at 9–13.

### B. Plaintiff's Opposition

In response to the contention that he lacks standing, Plaintiff points to the "widespread distribution of the [A]rticle through MCA subscriptions and online access" and insists that there is an "obvious" connection between his status as the son of the deceased soldier depicted in photographs discussed in the Article and the "claims sought to be adjudicated." ECF 17 at 5. Plaintiff further asserts that "[c]ontinued misappropriation of Angelo Klonis' likeness implicates a property right that results in exploitation of the value of the photographs bearing his image." *Id*. at 6. Responding to Defendants' suggestion that he merely seeks an advisory opinion, Plaintiff maintains that his "core grievance is directly connected to Defendants' misidentification of the soldier, making a direct remedy possible." *Id*. at 7. In terms of whether his Complaint adequately states a claim, Plaintiff argues that he has alleged sufficient facts to plausibly state claims for misappropriation of likeness, unjust enrichment, and false light. Plaintiff further emphasizes that, in his view, New Mexico law permits a misappropriation of likeness claim by the surviving relative

of the person whose likeness was misappropriated. *Id*. at 9–14.

## III. STANDARD OF REVIEW

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies[,]'" and "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) (citations omitted). "One element of the case-or-controversy requirement is that [the plaintiff] must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (2006). To establish standing, a plaintiff must demonstrate (1) that he suffered an "injury in fact"—that is, a violation of an interest that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks and citations omitted).

Because federal courts are of limited jurisdiction, it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction—standing included—to grant the relief requested. *Lujan*, 504 U.S. at 561.

## IV. ANALYSIS

This case comes before the Court in a curious posture. Defendant MCA removed the matter to this Court by invoking federal diversity jurisdiction, a familiar procedural step taken by many dozens of defendants in this District every year. So far, so good. But the wrinkle arose when, just

6

over a month later, Defendant MCA moved to dismiss on the grounds that Plaintiff *lacks Article III standing* for his claims and, alternatively, that he fails to state a claim under Rule 12(b)(6). Critically, Article III standing is a *jurisdictional* issue, *see Colorado Envt'l Coal v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004), and "[f]or an action to be properly removable to federal court, it must also satisfy 'Article III's justiciability requirements[,]'" *Buscema v. Wal-Mart Stores East LP*, 485 F. Supp. 3d 1319 (D.N.M. 2020) (citation omitted). So in essence, Defendants in one breath assert that the Court should exercise federal jurisdiction over Plaintiff's claims on removal, but in the next breath assert that Plaintiff's lack of standing *deprives* this Court of jurisdiction. These assertions appear incongruous and do not rest comfortably alongside each other.

Typically, the party invoking federal jurisdiction—here, Defendant MCA—bears the burden of establishing that *all* elements of jurisdiction, including Article III standing, exist at removal. *See Lujan*, 504 U.S. at 561. But rather than satisfying that burden, Defendants instead contend that Plaintiff *lacks* Article III standing. And Plaintiff, whose case was removed away from his chosen state court forum, now finds himself on the other side of the jurisdictional argument: asserting that he *has* Article III standing to pursue his claims in the federal forum he did not choose. A curious posture indeed.

Although a significant portion of Defendants' briefing and argument has been directed to the merits of Plaintiff's claims, the Court is cognizant that it may not skip over the jurisdictional issue that Defendants raise here, even to arrive at an easier answer on the merits of a particular claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (concluding that "hypothetical jurisdiction," by which courts resolve contested questions of law when jurisdiction is in doubt, produces a "hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court."). The Court therefore turns directly to the threshold

jurisdictional issue of Article III standing. Because the Court ultimately agrees with Defendant MCA that Plaintiff lacks Article III standing for his claims, the Court's analysis begins and ends with that jurisdictional inquiry.

**A. Plaintiff's claims fail to demonstrate Article III standing.**

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citations omitted). Here, Plaintiff has conceded that the *remedies* he pled as independent counts in his Complaint (*i.e.*, recission/correction and injunctive relief) do not constitute independent causes of action, [*see* ECF 17 at 14 n.2], which leaves the following claims over which he must demonstrate standing: declaratory relief, unjust enrichment, false light, and misappropriation of likeness. ECF 1-1 at 8–12.

In his declaratory relief claim, Plaintiff seeks a declaration "that the individual portrayed in the photograph on the cover of the 1944 issue of *Life* Magazine [Dangling Cigarette – Look Back] and the Weary Soldier Commemorative Stamp . . . is Evangelo Klonis." ECF 1-1 ¶ 40. Just like suits for every other type of remedy, declaratory judgment actions must satisfy Article III's standing requirements. *See California v. Texas*, 593 U.S. 659, 672 (2021). For his part, Plaintiff asserts that this claim presents "[a]n actual and justiciable controversy . . . as to the identification of the individual in the[] iconic photographs and the rights and interests of the Parties regarding such photographs." *Id*. ¶ 39. Because declaratory judgment statutes are "strictly procedural" and "without inherent substantive dimensions," the Court's standing analysis for Plaintiff's declaratory relief claim is effectively subsumed by its standing analysis for Plaintiff's substantive claims. *See Atlas Biologicals, Inc. v. Katrubes*, 50 F.4th 1307, 1327 n.5 (10th Cir. 2022) (concluding that the court's focus when analyzing the plaintiff's standing to assert declaratory judgment claims was

whether the plaintiff had standing to litigate its substantive state law claims). Put another way, Plaintiff's standing to pursue his declaratory relief claim turns on whether he has standing to pursue his misappropriation of likeness, unjust enrichment, or false light claims.

Defendants take the position that Plaintiff lacks standing for each of these substantive claims, both because he fails to sufficiently allege an "injury in fact" and because he fails to demonstrate a causal connection between some injury and Defendants' conduct. *See* ECFs 7 at 5–6; 18 at 3–4. Beginning with injury in fact, Defendants contend that Plaintiff "fail[s] to allege any concrete, particularized, and actual or imminent injury." ECF 7 at 5. Indeed, Defendants maintain that Plaintiff has alleged "no specific injury whatsoever" except as to his false light claim. *Id*.

To be sure, the injury-related allegations in Plaintiff's Complaint are largely non-specific and conclusory. *See, e.g.*, ECF 1-1 ¶ 48 (Count III, for unjust enrichment, alleging that "[a]s a direct and proximate result of Defendants' conduct, Plaintiff has been *damaged* . . .) (emphasis added); ¶ 59 (Count V, for misappropriation of likeness, alleging "[t]he wrongful acts of Defendant MCA were done [with a] clearly *foreseeable impact* upon Plaintiff and his family.") (emphasis added). Nor does Plaintiff's briefing shed light on the injury he purportedly suffered. Instead, his injury-related arguments, like the allegations in his Complaint, are generalized and abstract. *See, e.g.*, ECF 17 at 3 ("[Plaintiff]—along with other family members—have *suffered* by Roecker's misidentification . . . .") (emphasis added), 5 ("Contrary to Defendant's claim that Plaintiff does not state how he has been injured, Plaintiff refers to the widespread distribution of the article . . . by which Defendants have been unjustly enriched."). Although Plaintiff need not assert "detailed factual allegations" for purposes of standing, he must "set forth 'more than labels and conclusions.'" *Lavigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1141 (D.N.M. 2016) (explaining that a plaintiff must plead the elements of standing in accordance with *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In the context of Plaintiff's misappropriation of likeness and unjust enrichment claims, the Court is not convinced that his bare allegations that he was "damaged" and/or "impacted" by Defendants' conduct suffice to establish injury in fact. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (reasoning that the complaint's reference to "actual damages" fell "far short" of an allegation that the plaintiffs suffered injury in fact) (citations omitted).

Notably, Plaintiff's misappropriation of likeness and unjust enrichment claims are derivative in the sense that they relate to the alleged misuse of Plaintiff's father's likeness, not his own. *See* ECF 1-1 ¶¶ 47, 57; *see also* ECF 17 at 13 n.1 (explaining that the basis for Plaintiff's misappropriation of likeness claim "is to protect and preserve images of his deceased father, Angelo Klonis"). Because Plaintiff asserts these claims in his individual capacity, he must allege that *he* "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks and citations omitted).

"For an injury to be particularized, it must affect [Plaintiff] in a personal and individual way." *Id*. In other words, he must demonstrate a personal stake in the outcome of his claims, and he may not assert claims based solely on injuries to another. *Id*. at 338 n.6. In addition, any injury to Plaintiff must be "concrete." *Id*. at 339. The concreteness requirement is "quite different from particularization" and requires an injury to be "*de facto*." *Id*. at 340 (citations omitted). The injury must "actually exist"; it must be "real . . . and not abstract." *Id*. (quotation marks and citations omitted). For the reasons that follow, Plaintiff's conclusory allegations that he was "damaged" and that he and his family were "impact[ed]" by Defendants' use of his father's likeness [*see* ECF 1-1 at ¶¶ 48, 59] do not amount to particularized or concrete injury necessary for standing.

Significantly, Plaintiff does not purport to bring this lawsuit on behalf of his father or his father's estate; rather, he asserts his claims on his own behalf and seeks damages in his own favor, albeit for the misappropriation of his *father's* likeness.[5] Absent an allegation that Plaintiff's deceased father's legal rights have been assigned to Plaintiff, the Court cannot say that he has plausibly alleged standing for such a claim. *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000) (explaining that the assignee of a claim may have standing to assert the injury in fact suffered by the assignor). At most, Plaintiff suggests that there exists "an obvious. . . and logical . . . nexus between [his] status as son of the deceased and the claims sought to be adjudicated." *See* ECF 17 at 5. To the contrary, it is *not* obvious to the Court how Plaintiff suffered injury in fact from Defendants' alleged misappropriation of Plaintiff's father's likeness, particularly where Plaintiff was neither named nor depicted in the subject Article. Plaintiff's conclusory argument otherwise is unconvincing. Ultimately, the Court concludes that Plaintiff's misappropriation of likeness claim fails to allege that he was injured in a personal and concrete way sufficient to establish injury in fact.

In his unjust enrichment claim, Plaintiff maintains that Defendants have been unjustly enriched through Defendant Roecker's reference to famous photographs of Plaintiff's father.[6] *See*

---

[5] In asserting the misappropriation of likeness claim on his own behalf, Plaintiff insists that, under New Mexico law, the cause of action survives the death of the decedent whose likeness was misappropriated. *See* Hr'g 42:50–44:09, 1:07:37–1:05:02. Defendants disagree and suggest that *Smith v. Artesia*, 772 P.2d 373 (N.M. Ct. App. 1989) undermines Plaintiff's position regarding the claim's survival beyond the death of Angelo Klonis. *Id*. at 26:00–26:40, 1:04:37–1:05:02. The Court need not resolve the dispute as to the claim's survivability in the context of its standing analysis. For one thing, *Smith*, the case on which both sides rely, did not address Article III standing. For another, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed" by a cause of action, even if the cause of action itself requires no showing that the plaintiff was personally and actually harmed. *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)).

[6] Plaintiff's claim in this regard is not especially easy to follow. Nonetheless, as the Court understands it, Plaintiff's legal theory is that Defendants used Angelo Klonis's fame, attributed it to Underwood, and made money off that false representation and off of Angelo Klonis's likeness, which appeared on millions of stamps. *See* Hr'g at 57:49–1:00:59.

ECF 1-1 ¶ 45–48. When the Court inquired into the factual basis underlying his unjust enrichment claim, Plaintiff suggested that it was derivative of his misappropriation of likeness claim. *See* Hr'g at 45:50–47:18. Regardless, for purposes of Article III standing, Plaintiff must identify a concrete harm that he personally suffered as a result of Defendants' conduct. But Plaintiff does not contend that he was entitled to any portion of the proceeds Defendants received for publishing the Article. Instead, he asserts that "[c]ontinued misappropriation of Angelo Klonis' likeness implicates a property right that results in exploitation of the value of the photographs bearing his image." ECF 17 at 6 (citing *Benally v. Hundred Arrows Press, Inc.*, 614 F. Supp. 969, 978–79 (D.N.M. 1985), *reversed on other grounds by Benally v. Amon Carter Museum of W. Art*, 858 F.2d 618 (10th Cir. 1988)). But Plaintiff stops short of arguing that *he* has a property right in any photograph of his father. Because the Complaint leaves Defendants and the Court to guess what injury, if any, Plaintiff could have personally suffered from Defendants' alleged misidentification of the soldier depicted in the photographs described in the Article, the Court concludes that Plaintiff has likewise failed to allege injury in fact as to this claim.

Turning to Plaintiff's false light claim, the Court acknowledges that Plaintiff identifies more direct and specific injury than he does with respect to his other claims. Specifically, he alleges that Defendants' Article, by representing that "claims that Evangelo Klonis is the solider in the [subject] photographs have been 'debunked' [by] . . . 'further research' . . . implies that Plaintiff Klonis is a liar, a cheat and a fraud thereby placing [him] in a false light, which is considered highly offensive to a reasonable person." ECF 1-1 ¶ 51. Defendants all but concede that Plaintiff has alleged a specific injury related to this claim. *See* ECF 7 at 5 ("Apart from an unsupported allegation for his false light claim, . . . Plaintiff alleges no specific injury whatsoever."), 6 ("Plaintiff's most identifiable injury [was] his unsupported claim that the Article implies that he is

a 'a liar, a cheat and a fraud.'"). Bearing in mind that even "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage, *Lujan*, 504 U.S. at 560–61, the Court is satisfied that Plaintiff's allegations, assumed to be true, implicate a specific injury that is personal to Plaintiff. For even "[i]ntangible harms, like harm to reputation," can satisfy Article III standing. *See Umfress v. City of Memphis, Tenn.*, No. 20-6115, 2021 WL 2828023, at *2 (6th Cir. July 7, 2021); *see also Garcia v. SigmaTron Int'l*, 986 F.3d 1058, 1065 (7th Cir. 2021) (allegations that conduct caused "emotional harm in the form of distress and humiliation sufficed as a pleading matter to establish the requisite injury in fact for Article III standing").

But there is more to the story. That Plaintiff has articulated with some specificity the *type* of harm (*i.e.*, reputational harm) he allegedly suffered as a result of Defendants' conduct does not mean that he has adequately alleged *actual, non-conjectural* injury sufficient to satisfy the requirements of standing. Focusing on the specific language of the Article, the Court concludes that Plaintiff has alleged specific injury but not injury in fact. Quite apart from directly criticizing Plaintiff in the Article, Defendant Roecker wrote: "Notably, Underwood is sometimes thought to be Army Sargeant [sic] Angelo Klonis, although further research debunks this claim." *Id*. (quoting Ex. 6 at 59). Plaintiff's false light claim necessarily rests on his conjecture that someone reading the Article might believe (1) that, although he is not named in the Article, Plaintiff was someone who thought the photographs described in the Article were of Angelo Klonis; (2) that Plaintiff's beliefs to that effect have been debunked; and (3) that Plaintiff is therefore lying and defrauding the public when he asserts that the referenced photographs are of his father, Angelo Klonis. In the Court's view, any injury to Plaintiff from Defendants' statements in the Article can only be described as speculative, conjectural, and theoretical, not actual or concrete. *See Clapper*, 568 U.S. at 410 (concluding that the respondents had not established injury in fact because their claims

13

"rest[ed] on . . . highly speculative fear" and "rel[ied] on a highly attenuated chain of possibilities").

Plaintiff's position at oral argument is telling in this regard. The Court questioned how Plaintiff could plausibly allege that he was placed in a false light, given that the Article does not mention him or any of his living family members by name, or even suggest that Angelo Klonis *had* a family. Hr'g at 40:23–40:46. Plaintiff's counsel responded by suggesting that it was logical that Plaintiff would be a member of the public to which the Article refers who believes the photographs referenced by Defendants are of Angelo Klonis. *Id*. at 40:23–41:37. But unnamed members of the public, as Plaintiff's counsel characterizes Plaintiff, surely lack Article III standing to assert a false light claim against Defendants. Concluding otherwise would stretch the concept of injury in fact beyond reason.

Even if Plaintiff could demonstrate injury in fact for his false light claim, which the Court is not convinced that he can, it does not necessarily follow that he has standing for that claim. Indeed, Defendants makes a second standing-related argument: that Plaintiff's allegations fail to demonstrate a causal connection between his injury and the conduct about which he complains. ECF 7 at 6. To meet the causal connection element of standing, the injury must be "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560–61. In short, Plaintiff "must allege 'a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, N.M.*, 993 F.3d 802, 814 (10th Cir. 2021).

As to this second element of standing, Defendants contend that Plaintiff's "unsupported claim that the Article implies that he is 'a liar, a cheat and a fraud,'[]—cannot fairly be traced to [Defendants'] actions." ECF 7 at 6. According to Defendants' logic, "it would have been

14

impossible for [them] to [injure] Plaintiff by a publication when Plaintiff is not mentioned or represented in the Article at all." *Id*. In response, Plaintiff argues that his reputational harm "is tied directly to the actions of Defendants." ECF 17 at 6. But Plaintiff's insistence that reputational harm was a product of Defendants' statements in the Article does not make it so. Plaintiff merely speculates that reputational harm did or might result from implications present in the Article, and such speculation "cannot satisfy the requirement that any injury in fact . . . be fairly traceable to" the alleged source. *See Clapper*, 568 U.S. at 410–11. The Court agrees that Plaintiff has failed to satisfy the causal connection element of standing with respect to his false light claim.

In the end, the Court concludes that Plaintiff has not alleged an injury in fact that is fairly traceable to Defendants' conduct for any of his substantive claims. Moreover, Plaintiff's claim for declaratory relief amounts to a request for an advisory opinion as to the identity of the soldier in two photographs that do not depict Plaintiff and that are not even reproduced in the Article. Absent a showing that the elements of standing are present for any of Plaintiff's substantive claims, the Court will not weigh in further on their merits.

Without standing, the Court is deprived of subject matter jurisdiction over Plaintiff's claims. *See Jepsen v. Texaco, Inc.*, 68 F.3d 483 (10th Cir. 1995); *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074–75 (D.N.M. 2023). Although Defendants seek dismissal with prejudice [*see* ECF 18 at 9], the appropriate disposition of a removed case over which the Court lacks jurisdiction is not dismissal but remand. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Jepsen*, 68 F.3d at *2 (concluding that because a "[l]ack of standing divests the court of subject matter jurisdiction," a determination in a removed case that the plaintiff lacked standing necessitated remand pursuant to 28 U.S.C. § 1447(c)); *accord Plazzi v. FedEx Ground Package*

*Sys., Inc.*, 52 F.4th 1 (1st Cir. 2022); *Collier*, 889 F.3d at 897 (7th Cir. 2018); *Wallace*, 747 F.3d at 1033 (8th Cir. 2014); *Ladies Mem'l Ass'n v. City of Pensacola*, 34 F.4th 988, 993–94 (11th Cir. 2022).

Still, Defendants invite the Court to address the merits of Plaintiff's claims regardless of its determination as to standing. *See* ECF 18 at 9; Hr'g at 13:15–14:05 (suggesting that the Court could reach the merits of Plaintiff's claims under Rule 12(b)(6) as an alternative ruling, even if the Court agrees with Defendants that Plaintiff lacks standing). The Court must resist this invitation. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1217 (10th Cir. 2006) ("[O]nce a court determines it lacks jurisdiction over a claim, it perforce lacks jurisdiction to make any determination of the merits of the underlying claim."). It will instead be up to the state court—if it has standing under its own doctrine—to resolve the merits of Plaintiff's claims. [7]

### B. The Court declines to award fees or costs pursuant to 28 U.S.C. § 1447(c).

The Court's decision to remand raises the issue of a potential fee and cost award, as 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Although it is within the Court's discretion to award fees and costs, the Court declines to do so here for three reasons: First, this matter is before the Court on Defendants' Motion to Dismiss, not on Plaintiff's Motion to Remand (as no such motion was filed). Second, Plaintiff did not request—much less develop a basis for—such an award in his briefing or at oral argument. And third, neither side alerted the Court that the legal conclusion that Plaintiff lacks Article III standing compels the Court

---

[7] Notably, "state courts are not bound by" Article III federal standing requirements. *ASARCO Inc. v. Kadish*, 490 U.S. 605 (1989). Thus, on remand, the state court may take a different view as to the justiciability of Plaintiff's claims and may reach the merits of those claims. Regardless, "a state's standing doctrine is 'the business' of its own courts; 'it is not for [this Court] to venture how the case would there be resolved." *Collier*, 889 F.3d at 897 (citation omitted). This Court expresses no view as to whether Plaintiff's Complaint establishes his standing to pursue his claims in New Mexico state court using New Mexico law.

16

to *remand* the case rather than dismiss it. To be sure, this is the first time in the Court's experience that a defendant has removed a case to federal court by invoking its subject matter jurisdiction only then to argue that the Court does not have subject matter jurisdiction because the plaintiff lacks standing to pursue his claims in the Article III forum the plaintiff did not choose. The Court suspects that the very experienced counsel on either side of this case have not seen a case in this peculiar procedural posture before either. For all of these reasons, the Court concludes that no fees or costs will be awarded.

### C. Plaintiff's request to amend his complaint is now moot.

In his response brief, Plaintiff requests that "if Defendant's Motion to Dismiss is granted in whole or in part, . . . such dismissal be without prejudice and . . . Plaintiff be granted leave to amend his Complaint pursuant to [Rule] 15(a)(2)." ECF 17 at 15. To the extent Plaintiff seeks to avoid dismissal of his claims with prejudice, the Court's decision to remand effectively forecloses such a result. In light of its decision to remand this matter to state court, the Court will deny the remainder of Plaintiff's request to amend his Complaint as moot.

## V. CONCLUSION

For the foregoing reasons, Defendant Marine Corps Association's Motion to Dismiss [ECF 7] is **GRANTED** to the extent Defendants seek a determination that Plaintiff lacks Article III standing for the claims asserted in his Complaint but **DENIED** to the extent Defendants seek dismissal with prejudice.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the First Judicial District Court, Santa Fe County, New Mexico for lack of subject matter jurisdiction.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*